# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

**SABAL TRAIL TRANSMISSION, LLC,**

      *Plaintiff,*

 **v.**                                 **Case No.:  1:16cv97-MW/GRJ**

**+/- 0.981 ACRES OF LAND IN
LEVY COUNTY, FLORIDA,
ROBERT B. ANGLE, JR., ATTORNEY,
AS SUCCESSOR EXECUTOR OF THE
ESTATE OF EILEEN KAY WYNNE,
et al.,**

      *Defendants.*

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS

Pending before this Court is Defendant's amended motion for attorneys' fees and costs, ECF No. 164, Plaintiff's response in opposition, ECF No. 171, Defendant's reply in support of the fee motion, ECF No. 176, and Plaintiff's sur-reply, ECF No. 181. This Court has considered, without hearing, the papers consistent with its prior Order striking some of Defendant's unauthorized declarations filed along with Defendant's reply brief. *See* ECF No. 180. For the reasons set out below, Defendant's amended motion, ECF No. 164, is **GRANTED in part and DENIED in part.**

This Court previously held that state substantive law governs the measure of compensation in eminent domain cases brought by private parties against private property owners under the Natural Gas Act. Accordingly, Florida's full compensation measure applies here, which includes reasonable attorney's fees. *See* Fla. Const. art. X, § 6(a) ("No private property shall be taken except for a public purpose and with *full* compensation therefor paid to each owner . . . .") (emphasis added); *Joseph B. Doerr Trust v. Cent. Fla. Expressway Auth.*, 177 So. 3d 1209, 1215 (Fla. 2015) (holding that it is "fundamentally clear" that the definition of full compensation under Florida's Constitution includes reasonable attorney's fees (citations omitted)). Last year, the Eleventh Circuit affirmed this Court's determination as to the governing law in a related case. *See Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*, 59 F.4th 1158, 1175 (11th Cir. 2023).

Now Defendant moves for attorney's fees and costs—asking first to award fees pursuant to Florida's reverse offer of judgment statute, section 73.032, Florida Statutes—or, in the alternative, to award benefits-achieved fees under section 73.092(1), Florida Statutes, plus additional fees for supplemental proceedings, excessive litigation, and appellate work. Plaintiff challenges Defendant's motion for costs and fees, asserting, among other things, that Defendant improperly seeks additional fees beyond the "benefits-achieved" amount allowed under Florida law.

2

This Court will address fees and costs in turn, beginning with a discussion of how Florida law determines the amount of attorney's fees as a component of "full compensation" pursuant to section 73.092, Florida Statutes, and the amount of fees Defendant is entitled to.

## I.     "Reverse Offer of Judgment" Fee Award under § 73.032(6), Fla. Stat.

To start, Defendant asks this Court to award reasonable fees based on Plaintiff's rejection of Defendant's offer of judgment, pursuant to section 73.032(6), Florida Statutes. Defendant argues that they are entitled to $176,705.50 in attorney's fees by operation of section 73.032(6), because the judgment entered in this case was equal to or more than Defendant's original offer of judgment. But Plaintiff asserts that Defendant's offer of judgment is void because it did not conform with the requirements of section 73.032, Florida Statutes. This Court agrees with Plaintiff that Defendant is not entitled to fees pursuant to section 73.032(6).

Section 73.032 sets out "the exclusive offer of judgment provisions for eminent domain actions." § 73.032(1), Fla. Stat. It provides, in part, that "[a] defendant may make an offer to have judgment entered against defendant for payment of compensation by petitioner only for an amount that is under $100,000," and "such offer may be served on petitioner no sooner than 120 days after the defendant has filed an answer and no later than 20 days prior to trial." *Id*. § 73.032(3). In the event "petitioner rejects the offer of judgment made by defendant

and the judgment obtained by defendant, exclusive of any interest accumulated after the offer of judgment was initially made, is equal to or is more than such offer," then Defendant is entitled to "a reasonable attorney's fee . . . based on the factors set forth in § 73.092(2) and (3)." *Id*. § 73.032(6).

Section 73.032 includes several formal requirements for the offer of judgment. Specifically, section 73.032(4)(a) requires, among other things, that the offer "be in writing," and that it "settle all pending claims with that party or parties *exclusive of attorney's fess and costs*." *Id*. § 73.032(4)(a)1.–2. (emphasis added). As with other Florida statutes governing offers of judgment, section 73.032 is in derogation of common law, and thus, must be strictly construed. *See Wilcox v. Neville*, 283 So. 3d 878, 881 (Fla. 1st DCA 2019) (citing *Tierra Holdings, Ltd. v. Mercantile Bank*, 78 So. 3d 558, 561 (Fla. 1st DCA 2011)).

Here, Defendant's written offer of judgment fails to meet section 73.032's requirements—including the term that it settle all pending claims "exclusive of attorney's fees and costs"—because it demanded Plaintiff "to pay Defendant the total amount of $66,500 as full compensation, *inclusive of any claims for attorney's fees and costs . . . .*" ECF No. 160-5 at 2 (emphasis added). Moreover, Defendant does not appear to be entitled to fees under section 73.032(6) because the "total amount of the offer"—here, $66,500—*exceeded* the amount Defendant ultimately received when this case subsequently settled—$34,807.16. *Compare* ECF Nos. 160-

4

5 (Offer of Judgment) and 160-6 (Settlement Agreement). Accordingly, this Court concludes that Defendant is not entitled to fees pursuant to section 73.032(6), Florida Statutes, and the amended motion, ECF No. 164, is **DENIED with respect to this request.**

Next, this Court considers Defendant's request for "benefits achieved" fees under section 73.092(1), Florida Statutes.

### II. "Benefits Achieved" Fee Award under § 73.092(1), Fla. Stat.

In eminent domain proceedings, Florida law provides "the measure to set an award of fees based solely on the benefits achieved for the client." *City of North Miami Beach v. Reed*, 863 So. 2d 351, 354 (Fla. 5th DCA 2003) (internal quotation marks omitted). Section 73.092(1)(a) defines "benefits" as "the difference, exclusive of interest, between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney." § 73.092(1)(a), Fla. Stat. The statute sets a sliding scale, taking into consideration the "benefits achieved," to calculate attorney's fees. Eligible fee awards include 33% of any benefit up to $250,000, plus 25% of any portion of the benefit between $250,000 and $1 million. *See* § 73.092(1)(c)1.-2., Fla. Stat.

"Section 73.092 is intended to promote settlements and deter litigation." *Seminole Cnty. v. Coral Gables Fed. Sav. & Loan Ass'n*, 691 So. 2d 614, 615 (Fla. 5th DCA 1997). Accordingly, when "the condemning authority acknowledges there

5

has been a taking from the outset," it may preserve a statutory right to *limit* the landowner's attorney's fee award by making a written offer of settlement. *Reed*, 863 So. 2d at 354. Thus, the higher the last written offer of settlement relative to the final judgment, the lower the potential "benefit" and resulting fee award.

Here, Defendant seeks $7,260.00 as a "benefits achieved" fee award. ECF No. 164 at 5. Plaintiff does not oppose this request. ECF No. 171 at 11. This Court has reviewed Defendant's supporting materials to arrive at this amount and agrees that defense counsel is entitled to $7,260.00 for the "benefits achieved" for their client consistent with section 73.092(1), Florida Statutes. This is based on the a "benefit" totaling $22,000.00 (the difference between the final judgment of $32,000.00 exclusive of interest, and the last written offer before Defendant hired an attorney of $10,000.00). Applying the statutory sliding scale to this "benefit" yields $7,260.00 (33% of $22,000.00). Accordingly, based on the parties' agreement and the application of section 73.092(1)(c), Florida Statutes, Defendant's amended motion, ECF No. 164, is **GRANTED** as to the amount of "benefits achieved" attorney's fees totaling **$7,260.00** as a component of Defendant's full compensation.

Next, this Court considers Defendant's request for fees for "supplemental proceedings" under section 73.092(2).

6

### III. "Supplemental Proceeding" Fees under § 73.092(2), Fla. Stat.

Defendant also seeks $24,365.00 in attorney's fees for 44.3 hours that Mr. Brigham worked through "post-judgment supplemental proceedings." ECF No. 164 at 13. This request includes work related to "(a) obligations arising from Sabal trail's appeal . . . to the Eleventh Circuit, (b) the stay of proceedings in district court awaiting a dispositive ruling of the Eleventh Circuit" in this or related appeals on the controlling law issue, "and (c) the preparation of the motion for attorney's fees and costs and supporting documents." *Id.* at 11. Plaintiff agrees to Defendant's request in part but asks this Court to limit recovery of fees for post-judgment supplemental proceedings by reducing both the amount of time spent on certain matters and the hourly rates for the attorney doing the work. *See* ECF No. 171 at 11–17. Plaintiff seeks an overall reduction in post-judgment fees under section 73.092(2) from $24,365.00 to $15,180.00. *Id.*

In short, both sides agree that Defendant's claimed work is compensable under section 73.092(2) as post-judgment "supplemental proceedings." Plaintiff's primary contention in opposition to Defendant's claimed amount is the reasonableness of the request. Next, this Court addresses the method for calculating reasonable fees for supplemental proceedings before addressing Plaintiff's arguments for reduction of fees for work that is compensable under section 73.092(2).

*A. Lodestar Method for Determining Reasonable Fees Under*
*§ 73.092(2), Fla. Stat.*

As this Court has recognized in related cases, Florida has adopted the lodestar method to determine the reasonableness of an award of attorney's fees under section 73.092(2), Florida Statutes. *State, Dep't of Transp. v. LaBelle Phoenix Corp.*, 696 So. 2d 947, 948 (Fla. 2d DCA 1997). This Court "must expressly determine the number of hours reasonably expended on the litigation and the reasonable hourly rate for the type of litigation involved." *Lee Cnty. v. Tohari*, 582 So. 2d 104, 105 (Fla. 2d DCA 1991) (citations omitted). "These two factors are then multiplied to determine the basic lodestar fee." *Id*. (citation omitted).

In computing the lodestar amount, this Court "shall consider" a number of factors, including (1) the novelty, difficulty, and importance of the questions involved, (2) the skill employed by the attorney conducting the case, (3) the amount of money involved, (4) the responsibility incurred and fulfilled by the attorney, (5) the attorney's time and labor reasonably required adequately to represent the client in relation to the benefits resulting to the client, (6) the fee, or rate of fee, customarily charged for legal services of a comparable or similar nature, and (7) any attorney's fee award made under the "benefits achieved" provision in section 73.092(1). § 73.092(2)(a)-(g), Fla. Stat.

This Court begins with an analysis of the reasonableness of Mr. Brigham's hourly rate. This Court then considers whether Defendant's submissions

8

demonstrate that the number of hours claimed is reasonable. Finally, this Court considers whether the results in the case warrant adjustment of the lodestar figure based on the remaining factors set out in section 73.092(2).

### i. Reasonable Hourly Rates

The parties dispute whether Defendant's attorney's rate for his work on supplemental proceedings is reasonable. Having considered this issue in depth in previous cases, this Court is familiar with the notion that a "reasonable hourly rate" is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Maner v. Linkan LLC*, 602 F. App'x 489, 493 (11th Cir. 2015) (unpublished) (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). Moreover, section 73.092(2) similarly requires this Court to consider the fee, or rate of fee, customarily charged for legal services of a comparable or similar nature, when calculating fees for supplemental proceedings in an eminent domain case. § 73.092(2)(f), Fla. Stat. Finally, the Eleventh Circuit has recognized that this Court itself is an expert regarding the hourly rates charged in the local community. *Norman*, 836 F.2d at 1303.

The parties generally agree that the Northern District of Florida is the relevant market for purposes of comparing rates to those charged by lawyers of reasonably comparable skills, experience, and reputation. More specifically, Gainesville is the

appropriate market, given that this dispute concerned land in the Gainesville Division of the Northern District of Florida and the case was filed in Gainesville. *See ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) ("The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's service is 'the place where the case is filed.' " (quoting *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994))).[1]

Here, Defendant seeks $550/hour for Andrew Prince Brigham for work performed on supplemental proceedings. ECF No. 164 at 12. Defendant has provided Andrew Prince Brigham's affidavit, setting out his relevant experience. *See* ECF No. 160 at 45–51. This Court is also familiar with Mr. Brigham's experience and qualifications based on its review of similar fee motions in related cases. *See, e.g.*, *Sabal Trail Transmission, LLC v. 2.468 Acres of Land in Levy Cnty.*, Case No.:

---

[1] This Court acknowledges that the measure of compensation is governed by state law and Florida law requires a similar lodestar analysis. However, neither side has argued that this Court should look to the legal market in the Northern District of Florida, as a whole, rather than the Gainesville market, where this case was litigated, to determine the relevant "locality" for the customary fee charged for similar services. Indeed, in adopting a lodestar approach as a baseline when awarding certain fees in eminent domain cases, the Florida Supreme Court borrowed from the federal approach to determining a lodestar amount, including looking to "the fee customarily charged in the locality for similar legal services." *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985) (adopting federal lodestar approach); *Tohari*, 582 So.2d at 104 (applying *Rowe* to fee determination in eminent domain action). Consistent with this Court's practice of focusing on the specific market when engaging in a typical lodestar analysis under federal law, this Court looks to the Gainesville market here. As a final point, this Court notes that specifying the Gainesville market, rather than looking to rates charged across the Northern District of Florida, likely inures to the Plaintiff's benefit as Gainesville tends to support a *lower* customary rate than what lawyers typically charge in other parts of the Northern District of Florida, like Tallahassee.

1:16cv95-MW/GRJ, 2021 WL 9968356, at *4 (N.D. Fla. May 11, 2021). Mr. Brigham's qualifications are as follows.

Mr. Brigham is a senior attorney with thirty-two years of experience primarily in representing property owners with property issues, including eminent domain cases. ECF No. 160 at 45. He has been lead counsel in at least 40 valuation jury trials in eminent domain, some of which involved record-high jury verdicts against DOT. *Id*. at 46–47. Mr. Brigham's experience extends to representing clients in condemnation actions related to both interstate and intrastate natural gas pipelines, as well as appellate work with at least nine reported opinions to his name. *Id*. at 48.

Defendant has also provided the declaration of Charles Stratton, an attorney with over 40 years of experience and who has practiced eminent domain law in Florida. *See* ECF No. 162. Mr. Stratton opines that the hourly rate Mr. Brigham seeks for tasks performed on supplemental proceedings is reasonable and well within the range of reasonable rates for this type of work in the Northern District of Florida. He attests that he has experience as the chief eminent domain attorney for DOT, followed by his entry into private practice and representation of property owners and condemning authorities at the trial-court and appellate levels. *Id*. at 2. Mr. Stratton now works in Tallahassee and charges his own hourly rate of $610. *Id*. at 3. Over the course of his 40+ years of practice, Mr. Stratton has handled "dozens" of trials and appeals throughout Florida. *Id*. at 2. And he attests to his familiarity with rates

charged throughout the Northern District of Florida. *Id*. at 2-3. Accordingly, I find Mr. Stratton well qualified to opine as to the reasonableness of Defendant's attorney's proposed rate, as he has decades of experience in the area of eminent domain in the Northern District of Florida, including Gainesville, and knowledge of rates charged for similar services by lawyers of comparable skill, experience, and reputation.

Mr. Stratton opines that, based on his knowledge and experience, a survey he conducted of practitioners in the Northern District of Florida, and his review of Mr. Brigham's affidavit, he believes reasonable rates in the Northern District of Florida for associate attorneys with less than five years of experience range from $250 to $300, associates with greater than five years of experience range from $350 to $400, and senior attorneys range from $450 to $800. ECF No. 240 at 3–4. Mr. Stratton further opines that his review of the requested rates in this case are well within the range of reasonable fees with which Mr. Stratton is familiar. *Id*.

Plaintiff objects to awarding fees based on Mr. Brigham's current rate. Plaintiff argues that Florida law does not permit "prejudgment interest [to] be paid on costs or attorney's fees" in eminent domain cases and Defendant's request for "current rates" is an improper work around this prohibition. ECF No. 171 at 14 (quoting § 73.091(1), Fla. Stat.). Plaintiff also cites two cases prohibiting an award of prejudgment interest for fees and costs in eminent domain proceedings. *See e.g.*,

12

*Collier Cnty. v. RTG, LLC*, Case No.: 2:17-cv-14-FtM-38CM, 2018 WL5300200, *7 n.11 (M.D. Fla. Oct. 10, 2018) (recommending no award of prejudgment interest on fees based on section 73.091(1) despite parties' agreement that party was entitled to prejudgment interest on award of attorney's fees); *Hartleb v. State, Dep't of Transp.*, 711 So. 2d 228, 229 (Fla. 4th DCA 1998) (holding no statutory authority for entitlement to interest on attorney's fees in eminent domain proceedings). But neither of these cases construes the prohibition on awarding prejudgment interest on attorney's fees to also prohibit an award of reasonable fees based on an attorney's current rate.

Moreover, Defendant argues that the prohibition against prejudgment interest on attorney's fees "has never been held to either require historic rates or prohibit current rates from being applied under F.S. § 73.092(2)." ECF No. 176 at 20. This Court's own search has yielded no cases extending the prohibition on prejudgment interest in eminent domain proceedings as far as Plaintiff asks this Court to do. At best, Plaintiff cites *Philip Morris USA, Inc. v. Brown*, 313 So. 3d 898 (Fla. 1st DCA 2021), which provides that awarding fees in a wrongful death tobacco case based on current rates *and* awarding prejudgment interest on the fee award based on current rates "overcompensates the fee award by compounding the interest component of an award." *Id*. at 900. But *Philip Morris* was not an eminent domain case and has limited applicability here. Namely, it provides authority for the practice of awarding

13

fees based on current rates to account for "exceptional, unanticipated delay in the resolution of a case . . . ." *Id*. at 899 (citing *Fla. Dep't of Ag. & Consumer Servs. v. Bogorff*, 132 So. 3d 249, 257 (Fla. 4th DCA 2013)).

Additionally, more than half of the work that makes up Defendant's claim for "supplemental proceedings" occurred in 2023. Plaintiff has offered no reason why Defendant's fee should be capped at his 2021 rate based on the prohibition against awarding prejudgment interest for his most recent work performed in the last year. And this Court agrees with Defendant that the limited work performed in 2019 and 2020 on supplemental proceedings should be compensated at Mr. Brigham's current rate to account for the exceptional delay in receiving payment. *See Bogorff*, 132 So. 3d at 257 (holding that court did not abuse discretion by awarding current rates to account for delay in payment of attorney's fees in eminent domain action). This Court rejects the argument that Defendant's request for a current rate for work performed on supplemental proceedings should be limited to Mr. Brigham's historic 2021 rate.

In addition, Plaintiff argues that because this Court found Mr. Brigham's historic rate to be reasonable in another case involving a request for supplemental fees based on current rates, the same remains true here. ECF No. 171 at 17. However, in the case Plaintiff points to—Case No.: 1:16cv93—this Court rejected defense counsel's request to award "additional fees" based on the attorneys' increased rates

14

for work that had already been compensated by this Court's earlier fee award from 2021. *See* ECF No. 341 at 3–4 in Case No.: 1:16cv93-MW/GRJ. This Court also rejected defense counsel's request to award current rates for work performed on the "second appeal" in Case No.: 1:16cv93, because defense counsel failed to justify the increase in the rates that this Court previously awarded for work performed before the "second appeal." But, here, defense counsel has yet to recover *any* fees for the work performed in this case. Due to both the delay in payment for work performed as late as four years ago and the recent work performed subject to Mr. Brigham's current rate, this Court agrees with Defendant that his current rate should be awarded for work related to supplemental proceedings.

Ultimately, this Court finds Defendant's proposed rate for the work performed in post-judgment supplemental proceedings to be reasonable. This finding is based on both the materials filed in support of Defendant's fee request setting out Mr. Brigham's respective skill and years of experience, the opinion of Mr. Stratton finding Defendant's requested fee to be within the range of reasonable rates in this legal market and taking into consideration this Court's own knowledge and experience regarding hourly rates charged by attorneys in Gainesville.

Specifically, Mr. Brigham, who seeks $550/hour, has decades of experience and specialized knowledge gleaned from representing landowners in eminent domain cases in Florida at both the trial level and on appeal. He represented

Defendant as lead counsel, seeing this case through from the beginning in 2016, to judgment in 2019, on appeal, and in post-trial litigation through 2024. His work involved litigating novel issues of national importance and complexity. Therefore, fees based on Mr. Brigham's proposed, current rate will be awarded here.

ii. Number of Hours Reasonably Expended

The next step in the computation of the lodestar is a determination of reasonable hours expended on the litigation. Defendant expended 44.3 hours in litigating post-judgment matters purported to be "supplemental proceedings." Multiplied by Mr. Brigham's reasonable hourly rate yields a lodestar of $24,365.00.

Plaintiff raises several objections to certain billing entries submitted by Defendant for a total reduction of 13.4 hours. *See* ECF No. 171 at 12-13. Defendant's reply failed to address these objections and instead attached an unauthorized declaration to respond to Plaintiff's proposed reductions. *See* ECF No. 176 at 15. This Court struck Defendant's unauthorized declaration by separate order, ECF No. 180, thus this Court will only consider Defendant's amended motion and Plaintiff's response to address the reasonableness of the time claimed for supplemental proceedings. After a careful review of the objections, this Court will make the following reductions in calculating the lodestar figure.

First, Plaintiff asserts that Mr. Brigham's billing entry on April 6, 2020, for four hours spent on legal research and preparation of an unopposed motion that was

16

only seven pages long and contained minimal citation to legal authorities is excessive and should be reduced by two hours. ECF No. 171 at 12. This Court agrees that four hours is excessive for researching and writing this short, unopposed motion. This Court also finds Plaintiff's request to reduce the time to two hours is generous under the circumstances. Accordingly, this Court will reduce this time entry by two hours.

Next, Plaintiff asserts that time entries on August 18, 2020, and August 26, 2020, for 0.5 hours spent reviewing appellate orders are duplicative of time entries listed in Defendant's appellate time log. ECF No. 171 at 12. This Court agrees and will reduce Defendant's time for supplemental proceedings by an additional 0.5 hours.

Plaintiff also asks this Court to prorate Mr. Brigham's entry dated August 21, 2020, for six hours spent researching and preparing a motion that was substantially similar to motions filed in two related matters. ECF No. 171 at 12. Plaintiff argues that Defendant indicated proration of certain time across multiple cases but did not do so for this entry. This Court agrees that this entry should have been prorated and will therefore reduce the claimed time by four hours to a total time of two hours.

Finally, Plaintiff asks this Court to reduce entries for time spent on Defendant's motion for fees and costs and Mr. Brigham's declaration. ECF No. 171 at 12–13. Plaintiff asserts that these entries have already been reduced by half to

17

account for non-compensable time spent on determining the amount of fees, but that the total amount of time for work on both the motion and the declaration is excessive on its face. *Id*. at 13. Plaintiff also argues that the declaration itself includes arguments more appropriate for the motion and, combined with the motion, amounts to almost three times the word limit permitted for motions. Plaintiff asks this Court to reduce the hours spent working on the motion and declaration by 6.9 hours to a total of 16.1 hours (representing a 30% reduction).

This Court agrees that Mr. Brigham's 68-page declaration includes lengthy arguments that appear to supplement the arguments made in the motion to determine amount of fees and that Defendant did not otherwise move to enlarge the word limit with respect to the fee motion. This Court also agrees, in light of Defendant's failure to properly address this proposed reduction in its reply brief, that the amount claimed, notwithstanding the 50% reduction to account for non-compensable time, is excessive. This Court also finds Plaintiff's proposed reduction to be reasonable. Accordingly, this Court will reduce the time claimed for preparing the fee motion with respect to entitlement to fees by the requested 6.9. hours.

In sum, this Court agrees with Plaintiff's proposed reductions and reduces Mr. Brigham's total time on supplemental proceedings by 13.4 hours, for a total reasonable time of 30.9 hours. Multiplied by Mr. Brigham's reasonable rate of

$550/hour, the lodestar amount for time spent on "supplemental proceedings" amounts to $16,995.00.

### iii. Remaining Factors under § 73.092(2)(a)–(g)

Finally, in considering a reasonable fee award for post-judgment supplemental proceedings, this Court considers the remaining factors set out in section 73.092(2)(a)-(g).

*1. The novelty, difficulty, and importance of the questions involved*:

As this Court noted in its related cases, this case involved novel, difficult, and important questions pertaining to the choice of law for determining the proper compensation measure when a private entity takes a private citizen's property pursuant to its authority under the Natural Gas Act. The importance of this question cannot be understated given the interests the property owner has in receiving just compensation for his property.

*2. The skill employed by the attorney conducting the case*:

Defendant's attorneys were skilled litigators who ultimately achieved a good result for their client by settling this case.

*3. The amount of money involved*:

An enormous amount of time and money were involved in this case from the perspective of the property owner—ultimately, Defendant was able to recover nearly three times the last written offer for the property at issue with the help of counsel.

*4. The responsibility incurred and fulfilled by the attorney*:

The case was defended by Mr. Brigham's firm and Mr. Brigham took on the responsibility of litigating entitlement to fees and costs and monitoring this case pending appeal.

*5. Any attorney's fee award made under § 73.092(1):*

The parties have agreed that Defendant is entitled to a "benefits achieved" fee award under section 73.092(1). This award exceeds $7,000 and encompasses the work performed leading up to trial, and the benefits achieved by settling this case. While Defendant is entitled to this award, it does not warrant any adjustment in the fee award for post-judgment "supplemental proceedings," as these supplemental proceeding fees are not otherwise provided for under section 73.092(1).

In short, this Court finds Defendant's proposed hourly rate and the time expended with certain adjustments noted above to be reasonable. Accordingly, Defendant's fee request for post-judgment supplemental proceedings is **GRANTED in part**. Defendant is entitled to **$16,995.00 in "supplemental proceeding" fees** for **30.9 hours** of time expended on these proceedings multiplied by Mr. Brigham's reasonable hourly rate of $550/hour.

## IV.     "Excessive Litigation" Fees

Additional fees may be awarded in cases where the opposing party has dragged the property owner through "excessive litigation." *See Doerr Trust*, 177 So.

3d at 1219 (holding that "when a condemning authority engages in tactics that cause excessive litigation, section 73.09(2) shall be used separately and additionally to calculate a reasonable attorney's fee for the hours expended which are attributable to defending against the excessive litigation or actions"). Here, Defendant asserts that Plaintiff's position challenging the governing law with respect to attorney's fees and Plaintiff's reliance upon "zero-damage" easement valuations amounted to "over litigation" or excessive litigation within the meaning of *Doerr*. According to Defendant, Plaintiff's position on the attorney-fee issue and its reliance on capping fees to "benefits achieved" under Florida law was an intentional "tactic" used to place small landowners "under significant pressure to just roll over and accept less than the measure of full compensation." ECF No. 164 at 19.

Plaintiff, on the other hand, asserts it was justified in taking legal positions with respect to the governing law and the measure of compensation vis-à-vis attorney's fees and whether the pipeline easement caused severance damages related to market fear and stigma. *See* ECF No. 171 at 23–24. According to Plaintiff, "*Doerr* clearly was not intended to prevent condemnors from taking factually or legally supported positions on amounts claimed by landowners." *Id*. at 24. Plaintiff notes that its position on severance damages was supported by expert opinions which were unsuccessfully challenged by Defendant's *Daubert* motions. This is in stark contrast to *Doerr*, where the condemning authority relied upon an economist whose valuation

was based on multiple faulty assumptions and who was ultimately not permitted to testify at trial. *See* 177 So. 3d at 1213. The landowners in *Doerr* were forced to hire additional experts to combat the condemning authority's faulty expert valuation, which unnecessarily increased the number of hours the landowners' lawyers spent on the case. *Id*. Moreover, the condemning authority spent twice as much time deposing the landowners' experts as the landowners spent deposing the authority's experts. *Id*. These "two tactics"—namely, "(1) the use of Dr. Fishkind, and related evidence, and (2) prolonged deposition times of the [l]andowners' experts"—were deemed excessive, and thus, the landowners were entitled to attorneys' fees for the time spent responding to the "excessive litigation conduct caused by" the condemning authority. *Id*. at 1218.

The question before this Court is whether Plaintiff's decision to take a firm position on the governing law regarding compensation and attorney's fees and rely upon its experts' "zero-damage" easement valuations amounted to "excessive litigation" within the meaning of *Doerr*. The Florida Supreme Court declined "to attempt to define with absolute precision each and every element or item that could constitute or be considered excessive litigation in eminent domain cases . . . ." *Id*. at 1217. But the Florida Supreme Court did go so far as to describe "excessive litigation" as "litigation that diverges from what both trial courts and the legal community would normally expect in a normal or usual condemnation case with

22

regard to the work performed, theories and evidence advanced, and the number of attorney and paralegal hours expended." *Id*.

Here, this Court cannot say that Plaintiff's decision to take a position regarding the governing law for determining the measure of compensation "diverges from what both trial courts and the legal community would normally expect in a normal or usual condemnation case." Nor can this Court say any different with respect to Plaintiff's decision to rely on its "zero-damage" valuations while engaging in settlement negotiations and preparing for trial in the event a settlement could not be reached. Nonetheless, Defendant identifies almost all work performed after the impasse at mediation in November 2017, to when the parties ultimately reached a settlement agreement in March 2019, as work that was responding to excessive litigation allegedly caused by Plaintiff. *See generally* ECF No. 160–8. This work includes time spent responding to Plaintiff's *Daubert* motions challenging Defendant's experts and preparing for trial. But simultaneously preparing for trial and litigating the admissibility of expert opinions while also continuing to negotiate a settlement agreement is not conduct that diverges from what this Court would normally expect in a normal condemnation case under the Natural Gas Act.[2] Accordingly, Defendant's request for fees due to excessive litigation is **DENIED**.

---

[2] This is consistent with this Court's finding regarding compensable expert fees, as explained *infra*—namely, that Defendant's expert appraiser was not required to cease all work the

## V.    Appellate Fees under § 73.131, Fla. Stat.

Defendant also seeks attorney's fees for time expended in defending the judgment on appeal pursuant to section 73.131, Florida Statutes. Specifically, Florida law entitles a defendant in an eminent domain action to recover reasonable appellate fees, except when the defendant takes an appeal wherein the lower court's judgment is affirmed. *See* § 73.131(2), Fla. Stat. ("The petitioner shall pay all reasonable costs of the proceedings in the appellate court, including a reasonable attorney's fee to be assessed by that court, except upon an appeal taken by a defendant in which the judgment of the lower court shall be affirmed."). "[T]he lodestar approach should be used in establishing the amount of the reasonable appellate fees." *State, Dep't of Transp. v. Skinners Wholesale Nurs., Inc.*, 736 So. 2d 3, 7 (Fla. 1st DCA 1998).

A fee applicant must set out the general subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed. *Id.* at 1301. A fee applicant must exercise billing judgment by excluding "excessive, redundant, or otherwise unnecessary [hours]." *Hensley v. Eckerhart*, 461 U.S. 424,

---

moment Defendant received a settlement offer, but instead Defendant can be compensated for the appraiser's trial preparations performed while settlement negotiations were ongoing.

434 (1983). Where a fee applicant does not exercise billing judgment, "courts are obligated to do it for them." *ACLU of Ga.*, 168 F.3d at 428. When a request for attorneys' fees is unreasonably high, the court "may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut," but it cannot do both. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350–51 (11th Cir. 2008).[3] The Eleventh Circuit has "recognized that in cases 'where fee documentation is voluminous,' it will not be feasible to require a court to 'engage in such a precise [hour-by-hour] review.' " *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (quoting *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)) (finding 569.3 hours to be sufficiently voluminous that no hour-by-hour analysis was required). Accordingly, this Court will address each of Plaintiff's specific objections, performing an hour-by-hour analysis where "feasible" and an across-the-board cut where appropriate.

Here, Defendant seeks $155,673.00 in appellate fees, including $40,215.00 for work performed by Mr. Brigham's firm, plus $115,458.00 for work performed by attorneys at True North Law Group. ECF No. 164 at 35. Plaintiff raises numerous

---

[3] To be clear, this Court may apply both an hour-by-hour reduction to calculate the lodestar and an across-the-board reduction <u>after</u> computing the lodestar to account for the results obtained in the litigation. *See Fiedler v. Anglin's Beach Café, LLC*, No. 15-60989, 2017 WL 1278632, at *3 (S.D. Fla. Apr. 3, 2017) (construing *Bivens*).

objections to Defendant's appellate time and hourly rates and ultimately seeks a reduction in appellate fees to $34,117.50. *See* ECF No. 171 at 27.

Once again, this Court begins with an analysis of the hourly rates that Defendant's appellate attorneys seek. This Court then considers whether Defendant's submissions demonstrate that the number of hours claimed for work on the appeal is reasonable.

## *A. Reasonable Hourly Rates*

The parties dispute whether the rates that Defendant's attorneys seek for their appellate work are reasonable. Defendant seeks the following hourly rates for the attorneys who worked on the appeal: $700/hour for Thor Hearne, $575/hour for Stephen Davis, $550/hour for Tim Belz, $425/hour for J. Matthew Belz, $550/hour for Andrew Prince Brigham, $325/hour for E. Scott Copeland, and $200/hour for paralegal work. Defendant has provided the declarations of Andrew Prince Brigham and Thor Hearne setting out the relevant experience of the attorneys who have requested the above-listed rates. *See* ECF Nos. 160 and 161. Their qualifications are as follows.[4]

Thor Hearne is an experienced attorney with over thirty years of practice. ECF No. 161 at 1. He has been lead counsel in many high-stakes and complex federal

---

[4] Mr. Brigham's qualifications are the same as detailed in the "supplemental proceedings" fee section of this Order and apply with equal force to his appellate fee request.

trial-level and appellate cases throughout the United States, including numerous cases involving property rights and eminent domain in Florida. *Id*. at 1-2, 7. Further, Mr. Hearne has worked with Mr. Brigham on many matters and opines that Mr. Brigham has an "outstanding reputation as a trial attorney in eminent domain litigation." *Id*. at 13.

This Court is familiar with Stephen Davis's, Timothy Belz's, and J. Matthew Belz's backgrounds and experiences based on fee motions submitted in related cases. *See, e.g.*, *Sabal Trail Transmission, LLC*, 2021 WL 9968356, at *12. Mr. Davis is a partner with Mr. Hearne's firm. *Id*. He concentrates his practice in federal appeals at the Federal Circuit Court and U.S. Supreme Court, with specialization in election law. *Id*. Timothy Belz is Of Counsel to Mr. Hearne's firm. *Id*. at 2. He is an experienced attorney who was previously a partner of 24 years elsewhere before joining Mr. Hearne. *Id*. Before that, he was a trial attorney with the U.S. Department of Justice. *Id*. His work largely focuses on commercial, probate, and constitutional disputes at the trial and appellate levels. *Id*. J. Matthew Belz is an attorney with roughly 16 years of experience as a litigator, and his focus is on federal litigation and appeals. *Id*.

Defendant has also provided the declaration of Raymond T. Elligett, Jr., an attorney with over 40 years of experience, including appellate litigation. ECF No. 163. Mr. Elligett has been board certified in appellate practice by the Florida Bar

27

since 1994. *Id*. at 1–2. He has broad appellate experience and has appeared before Florida appellate courts and the Eleventh Circuit in a variety of cases. *Id*. Accordingly, I find Mr. Elligett to be familiar with appellate rates charged throughout the Northern District of Florida and qualified to offer his opinion on the reasonableness of Defendant's appellate attorneys' rates.[5]

Mr. Elligett opines that, based on his knowledge and experience, communication with other practitioners in the Northern District of Florida, and his review of Mr. Brigham's and Mr. Hearne's affidavits and accompanying exhibits, he believes defense counsel's requested current rates "are in the range of reasonable rates for lawyers of their skill and experience, particularly given the contingent nature of the matter." ECF No. 163 at 6.

Plaintiff objects to Defendants' appellate rates, (except for Mr. Copeland's rate) and argues that this Court should apply historical rates for the time sought. ECF No. 171 at 30. Ultimately, Plaintiff asks this Court to cap the rates at the amount this Court previously found to be reasonable in a related case—namely, $450/hour for Andrew Prince Brigham, $650/hour for Thor Hearne, $525/hour for Stephen Davis, $500/hour for Tim Belz, and $400/hour for J. Matthew Belz. *Id*.

---

[5] As this Court noted, *supra* at n.1, this Court's lodestar analysis is guided by rates customarily charged in the Gainesville market, rather than across the Northern District of Florida as a whole. Neither party has argued that this Court should look to rates charged across the Northern District rather than the Gainesville market where this case was litigated.

Absent any objection, this Court finds Mr. Copeland's rate of $325/hour to be reasonable. Further, for the same reasons this Court explained above, this Court agrees with Defendants that Mr. Brigham's requested, current rate of $550/hour is also reasonable.

However, this Court finds that Mr. Hearne and the attorneys with True North Law Group have not demonstrated that their requested, current rates are reasonable based on this record. To support the increase in their requested rates, Mr. Hearne cites a 10% upward adjustment to the rates this Court awarded in a related *Sabal Trail* case by the same percentage that his local rates have increased under the Laffey Matrix—a tool used to determine legal fees for attorneys in the Washington, D.C. market. *See* ECF No. 161 at 12 n.1. But Mr. Hearne's upward adjustment based on a percentage increase in rates charged in the Washington, D.C. market says nothing about what a reasonable adjustment would be for the Gainesville market. Accordingly, Mr. Hearne and the True North Law Group's requested appellate rates are not adequately supported based on this record.

Instead, based on this Court's expertise, this Court find the rates previously awarded for such work in a related case to be reasonable here as well. Accordingly, Mr. Hearne is entitled to a reasonable hourly rate of $650, Mr. Davis is entitled to a reasonable hourly rate of $525, Mr. Timothy Belz is entitled to a reasonable hourly rate of $500, Mr. J. Matthew Belz is entitled to a reasonable hourly rate of $400, and

29

paralegal assistance is entitled to a reasonable hourly rate of $180. This Court's finding is based on both the materials filed in support of Defendant's fee request setting out the attorneys' respective skill, reputation, and years of experience and taking into consideration this Court's knowledge of hourly rates charged by attorneys with comparable experience and reputations in Gainesville.

### B. Number of Hours Reasonably Expended

The next step in computing the lodestar is a determination of reasonable hours expended on the litigation. Defendant expended roughly 265 hours in litigating the appeal in this case.[6] Multiplied by these attorneys' reasonable hourly rates yields a lodestar of $146,847.50.[7]

Next, Plaintiff raises numerous objections to specific billing entries submitted by Defendant's attorneys. *See* ECF No. 171 at 27–30. After a careful review of the objections, this Court will make the following reductions in calculating the lodestar figure.[8]

---

[6] This includes 84.9 combined hours for Mr. Brigham and Mr. Copeland, and 179.5 combined hours for attorneys with Mr. Hearne's law firm. ECF No. 164 at 35.

[7] $106,632.50 requested for attorneys with Mr. Hearne's firm, $30,855.00 for Mr. Brigham, and $9,360.00 for Mr. Copeland. *See, e.g.*, ECF No. 160-14 and ECF No. 161 at 23–26 (charting total hours expended on appeal).

[8] Rather than properly respond to these objections, Defendant filed unauthorized declarations, which this Court struck. *See* ECF No. 180.

First, Plaintiff asserts this Court should deny 13.7 of Mr. Hearne's time spent on work regarding jurisdictional questions posed by the Eleventh Circuit, because Defendant's written response had already been filed when Mr. Hearne incurred this time. ECF No. 171 at 27. This Court agrees and reduces Mr. Hearne's time by 13.7 hours, for a total reduction to the lodestar of $8,905.00.

Plaintiff asserts that even after reducing this time by 13.7 hours, Defendant's counsel spent an additional 49.7 hours working on the jurisdictional questions. Plaintiff argues this is an excessively long time to work on the questions posed, particularly when the briefing on this issue included approximately 12 pages of argument on an uncontested issue. ECF No. 171 at 27. Plaintiff asks this Court to grant Mr. Hearne's 5.7 hours and Mr. Copeland's 17.5 hours and to deny Mr. Brigham's 26.5 hours spent on the jurisdictional questions, because Mr. Hearne was primary appellate counsel in this case. *Id*. at 28. Again, this Court agrees with Plaintiff and will reduce Mr. Brigham's time by 26.5 hours, for a total reduction to the lodestar of $14,575.00.

Next, Plaintiff asserts that Defendant unreasonably incurred time working on this case while the appeal was stayed between August 19, 2019, and April 10, 2020, pending appellate rulings in related cases. ECF No. 171 at 28. During this time, however, Defendant's counsel incurred time to "review appellate materials." *Id*. Plaintiff asserts this time was unreasonably incurred and the time entries are vague.

31

This Court agrees and will reduce Defendant's time by 5.6 hours for Mr. Hearne, 0.3 hours for Mr. Davis, and 1.5 hours for paralegal time, for a total reduction to the lodestar of $4,067.50.

Next, Plaintiff argues that Defendant's appellate counsel should have limited all further work on this appeal after the stay was lifted, because Defendant's counsel should have known that the Eleventh Circuit lacked jurisdiction to rule on the attorney fee issue based on the Eleventh Circuit's ruling in a related case. ECF No. 171 at 28–29. But Plaintiff ignores the fact that the Eleventh Circuit ordered Defendant to file a responsive brief once the stay was lifted. Plaintiff's position appears to punish Defendant for complying with an order of the Eleventh Circuit instead of moving to dismiss an appeal that Defendant did not initiate. Accordingly, this Court rejects Plaintiff's position that Defendant is entitled to no fees for time spent responding to the Eleventh Circuit's order to file an appellee's brief.

Apparently recognizing that their primary position is unnecessarily strong medicine, Plaintiff asks, in the alternative, for specific cuts to Defendant's appellate time entries following the Eleventh Circuit's order to file an appellee's brief. ECF No. 171 at 29 n.5. First, Plaintiff asks this Court to deny 7.3 hours by Mr. Hearne and 7.6 hours by Mr. Davis for work between April 14, 2020, and April 22, 2020, regarding conferencing and drafting possible motions for extension or briefing schedule. *See* ECF No. 161 at 23. Plaintiff asserts this time should be denied because

Defendant ultimately did not file the proposed motions billed for. This Court agrees and reduces Mr. Hearne's time by 7.3 hours and Mr. Davis's time by 7.6 hours for a total reduction of $8,735.00 to the lodestar. Plaintiff also asks this Court to deny 5.5 hours requested by Mr. Hearne for work on the appellate brief on May 26, 2020, because the brief had been filed days earlier. ECF No. 171 at 29 n.5. This Court agrees and reduces Mr. Hearne's time by 5.5 hours, for a total reduction of $3,575.00 to the lodestar. Plaintiff requests a further reduction of 1.5 hours for Mr. Copeland's time spent drafting two emails on July 13, 2020. *Id*. This Court agrees that this time is excessive and reduces the time by one hour for a total reduction of $325.00. Finally, Plaintiff argues that this Court should apply a 40% across-the-board cut to the 83.1 hours described as work on Defendant's brief. *Id*. Plaintiff asserts that because Defendant's counsel had already prepared four prior briefs addressing the same issues in the earlier-filed appeals, the total time requested here is excessive. But this Court disagrees—while many of the legal issues remained the same across the multiple appeals, the facts for each case were unique and required specific attention to detail in each case. Moreover, Mr. Hearne attests that he and his colleagues have exercised billing judgment in the recording of this time, which this Court credits. *See* ECF No. 161 ¶ 35. Accordingly, Plaintiff's request to cut Defendant's time spent on the appellate brief by 40% is **DENIED**.

Plaintiff also asserts Mr. Hearne's time should be reduced by 3.7 hours for work performed drafting and editing a motion to transfer fees that occurred *after* the motion had been filed days earlier, along with 4.7 hours for work on a reply in support of the motion to transfer fees that was also filed days before the time entry was documented. This Court agrees. Accordingly, Mr. Hearne's time is reduced by 8.4 hours, for a total reduction to the lodestar of $5,460.00.

Finally, Plaintiff asserts that after the Eleventh Circuit issued its Mandate in the appeal, the only remaining appellate issue was the amount of appellate attorney's fees to which Defendant was entitled—an issue that is not compensable. ECF No. 171 at 29. Nonetheless, Mr. Hearne and his colleagues continued to bill for tasks performed months and years later with respect to seeking attorney's fees. *See* ECF No. 161 at 26. This Court agrees with Plaintiff that this time is not compensable and reduces Mr. Hearne's time by 11.4 hours and Mr. Davis's time by 0.5 hours, for a total reduction of $7,672.50 to the lodestar.

For these reasons, Defendant's motion for attorneys' fees is **GRANTED in part** with respect to the appellate fee request. Defendant is awarded **$68,217.50 in appellate fees** for **117.7 hours** of work that attorneys Hearne, Davis, T. Belz, and M. Belz performed and **$25,315.00 in appellate fees** for **57.4 hours** that attorneys Brigham and Copeland performed, for **a total appellate fee award of $93,532.50.**

34

## VI. Costs under § 73.091, Fla. Stat.

Defendant seeks district court costs amounting to $16,772.03 and appellate costs amounting to $3,953.20 as part of Florida's "full compensation" measure. ECF No. 164 at 33, 36. As to appellate costs, Plaintiff objects to any award of costs, noting that the Eleventh Circuit transferred consideration only of appellate fees, but not costs, to this Court. ECF No. 171 at 31. This Court agrees and **DENIES** Defendant's request to award appellate costs.

As to costs incurred at the district court level, Florida law allows for recovery of reasonable costs in eminent domain actions. Section 73.091, Florida Statutes, specifically provides:

> (1) The petitioner shall pay attorney's fees as provided in s. 73.092 as well as *all reasonable costs incurred in the defense of the proceedings in the circuit court*, including, but not limited to, reasonable appraisal fees and, when business damages are compensable, a reasonable accountant's fee, to be assessed by that court. No prejudgment interest shall be paid on costs or attorney's fees.
>
> . . .
>
> (3) In assessing costs, the court shall consider all factors relevant to the reasonableness of the costs, including, but not limited to, the fees paid to similar experts retained in the case by the condemning authority or other parties and the reasonable costs of similar services by similarly qualified persons.
>
> (4) In assessing costs to be paid by the petitioner, the court shall be guided by the amount the defendant would ordinarily have been expected to pay for the services rendered if the petitioner were not responsible for the costs.

(5) The court shall make specific findings that justify *each sum awarded as an expert witness fee*.

§ 73.091, Fla. Stat. (emphasis added).

Plaintiff agrees that Defendant is entitled to most costs, but seeks to reduce the total amount to $12,034.61. ECF No. 171 at 25. Plaintiff does not object to $1,388.33 for the Lakemont Group, $650.00 for the Terra Alta Group, or $786.37 for court reporters. Absent any objection from Plaintiff, this Court finds that the time, rate, and total amount of fees due to the Lakemont Group, incorporated herein by reference to ECF No. 160-13 at 8–12, is reasonable, for a total award of expert fees of **$1,388.33**. Likewise, this Court finds, absent any objection from Plaintiff, that the 6.5 hours billed at $100/hour for the Terra Alta Group to be reasonable, for a total award of **expert fees of $650.00**. This Court also finds that Defendant is entitled to **$786.37 in court reporter fees.** However, Plaintiff objects to additional amounts under Defendant's remaining categories of costs. *Id*.

### A. Reasonable Expert Witness Fees

The largest category of costs Defendant seeks are expert witness fees—specifically for Matthew Ray and his firm, Cantrell Ray Real Estate, LLC. Without question, reasonable expert witness fees are included in the computation of reasonable costs. "[C]ondemning authorities are able to provide expert witnesses and appraisers, and if the defendant in condemnation proceedings is to be assured of full compensation[,] he should have the same tools available to him in a defense of his

36

right." *Cheshire v. State Road Dep't*, 186 So. 2d 790, 791 (Fla. 4th DCA 1966). However, "[s]uch costs . . . are subject to the close scrutiny of the court for the purpose of determining that such costs are reasonable and were necessarily incurred in the defense of the proceeding[.]" *Id*. (citations omitted). Accordingly, "[t]o be recoverable, experts' fees must be reasonable, and the experts' services must have been necessary." *Garber v. State, Dep't of Transp.*, 687 So. 2d 2, 3 (Fla. 1st DCA 1996) (citing *Dade Cnty. v. Midic Realty, Inc.*, 549 So. 2d 1207 (Fla. 3d DCA 1989) and *Sarasota Cnty. v. Burdette*, 524 So. 2d 1064 (Fla. 2d DCA 1988)). Moreover, "such fees [must] be reasonably and necessarily incurred in relation to *a proper issue in the case.*" *Leeds v. City of Homestead*, 407 So. 2d 920, 921 (Fla. 3d DCA 1981) (emphasis added) (citing *Hodges v. Div. of Admin., State, Dep't of Transp.*, 323 So. 2d 275 (Fla. 2d DCA 1975)). This Court must make specific findings justifying each award of expert witness fees. *State Dep't of Transp. v. Nassau Partners, Ltd.*, 878 So. 2d 1286, 1288 (Fla. 1st DCA 2004). Namely, this Court must list "the hours, rate, and total fee owed to each expert." *Id*.

In support of Defendant's claim for Mr. Ray's fees, Defendant attaches Mr. Brigham's declaration, ECF No. 160, and a bill of costs providing details about the tasks Mr. Ray's firm performed, the connection those tasks had to Defendant's case, the rates Mr. Ray's firm charged, and the time his firm spent on each task, ECF No. 160-4. Mr. Ray, along with others at his firm, billed a total of $12,728.70 in appraisal

37

fees. Mr. Ray's appraisal and prepared testimony was the result of work performed by three individuals. Matthew Ray performed 34.05 hours of work for $295/hour; Rikke L. Mihos performed 7.57 hours of work for $190/hour; and Sarah Pinkepank performed 5.22 hours of work for $190/hour. *See* ECF No. 160-13 at 6–7. This Court previously found these rates to be reasonable in a related case and continues to find them reasonable here. *See Sabal Trail*, 2021 WL 9968356, at *20.

Plaintiff raises two objections to the requested fees—namely, that Defendant should not be compensated for 1.89 hours of clerical work that is not properly compensable or 15 hours of "unnecessary" work incurred after Defendant failed to accept Plaintiff's settlement offer in December 2018. ECF No. 171 at 26. This Court will address both objections in turn.

As to Plaintiff's first objection that certain clerical tasks should not be compensated, this Court agrees. Accordingly, Ms. Mihos's time shall be reduced by 1.12 hours for time spent creating images for mailings and creating electronic files, for a total reasonable time expended of 6.45 hours and **a total fee of $1,225.50.** Likewise, Ms. Pinkepank's time shall be reduced by 0.77 hours for time spent compiling electronic files, preparing mailings, and organizing files, for a total reasonable time expended of 4.45 hours and **a total fee of $845.50.**

As to Plaintiff's second objection, Plaintiff contends that the 15 hours Mr. Ray spent preparing for trial between December 5, 2018, and January 30, 2019, is

"unnecessary," because Defendant could have accepted Plaintiff's settlement offer for Defendant's full compensation demand, reserving fees and costs on November 18, 2018. ECF No. 171 at 26. But Plaintiff's argument would impose an unworkable requirement on parties in cases that are engaging in settlement negotiation while simultaneously preparing for trial, by forcing their experts to cease all work in a case the moment they receive a settlement offer. Moreover, Plaintiff offers no case law to support their position. This Court disagrees with Plaintiff's contention that, given the unique facts of this case, the 15 hours Mr. Ray worked to prepare for trial by January 30, 2019, were "unnecessary," and thus, overrules this objection by Plaintiff.[9] Accordingly, Mr. Ray is entitled to a total reasonable time expended of 34.05 hours and **a total fee of $10,044.75.**

For these reasons, Defendant's motion for costs with respect to appraisal fees is **GRANTED in part**. The total fee award for Mr. Ray's appraisal is **$12,115.75.**

### B. Printing Costs

Defendant seeks $1,391.18 for copying and exhibit printing costs incurred from Copy Right. ECF No. 160-13 at 2. Plaintiff asserts these costs should be reduced pursuant to this Court's prior ruling in a related case inasmuch as this Court

---

[9] Indeed, Plaintiff's argument appears to mirror Defendant's now-rejected argument for additional fees for "excessive litigation." *See* n.2 *supra*. To the extent Plaintiff suggests that Mr. Ray's work between December 2018 and January 2019 was "excessive" because Defendant could have settled for comparable terms sooner, this argument is rejected consistent with this Court's conclusion rejecting Defendant's argument that Plaintiff engaged in excessive litigation by continuing to engage in trial preparation and settlement negotiation throughout much of this case.

held that printing documents used for mediation should not be taxed as costs, but instead such costs are properly subsumed as overhead expenses. *See* ECF No. 171 at 26. Defendant's affidavit in support of its request for costs asserts that all printing costs were for "trial exhibit preparation." ECF No. 160 at 59 (Table 8). But Plaintiff points out that one invoice from August 2017, totaling $125.87, was for printing that occurred shortly before the scheduled mediation and over a year before the jury trial date was set for this case. *See* ECF No. 171 at 26. Defendant offered no further detail regarding the necessity of this printing cost. Accordingly, this Court agrees with Plaintiff that the printing appears to have been for mediation and will reduce total printing costs by $125.87. Defendant's motion for costs with respect to printing costs is **GRANTED in part**, for a **total award of printing costs of $1,265.31.**

### C. Miscellaneous Expenses

Finally, Defendant moves for $32.13 in costs for courier expenses and "miscellaneous expenses." ECF No. 160-13 at 3. Specifically, Defendant seeks costs for FedEx, PACER, and postage costs. *Id*. Plaintiff objects to these expenses as non-taxable expenses. ECF No. 171 at 26–27. This Court agrees.  Such costs are properly categorized as overhead or "office expenses." *State, Dep't of Transp. v. Skidmore*, 720 So. 2d 1125, 1130 (Fla. 4th DCA 1998) ("Specifically, the postage, long distance calls, fax transmissions, and delivery service are office expenses that should

not have been taxed as costs."). Accordingly, Defendant's motion for costs is **DENIED** as to courier and miscellaneous expenses totaling $32.13.

### VII. Conclusion

For the reasons set out above,

**IT IS ORDERED**:

1. Defendant's amended motion for attorney's fees and costs, ECF No. 164, is **GRANTED in part** and **DENIED in part**.

2. Defendant is entitled to "benefits achieved" attorney's fees, under section 73.092(1), Florida Statutes, totaling **$7,260.00** as a component of Defendant's full compensation.

3. Defendant is entitled to post-trial supplemental proceeding fees, pursuant to section 73.092(2), Florida Statutes, totaling **$16,995.00.**

4. Defendant is entitled to appellate fees, pursuant to section 73.131, Florida Statutes, totaling **$93,532.50** for **57.4 hours** of work that attorneys Brigham and Copeland performed and **117.7 hours** that attorneys Hearne, Davis, T. Belz, and M. Belz performed.

5. Defendant's requests for fees based on a "reverse offer of judgment" and "excessive litigation" are **DENIED**.

6. Defendant is entitled to taxable costs, pursuant to section 73.091, Florida Statutes, as a component of his full compensation, including the following:

a. **$786.37** for court reporting services;

b. **$1,225.50** for 6.45 hours, payable at $190/hour, for Ms. Mihos;

c. **$845.50** for 4.45 hours, payable at $190/hour, for Ms. Pinkepank;

d. **$10,044.75** for 34.05 hours of time at $295/hour, for Mr. Ray;

e. **$1,388.33** for fees due to the Lakemont Group;

f. **$1,265.31** for printing costs; and

g. **$650**, representing 6.5 hours billed at $100/hour, for the Terra Alta Group.

7. Defendant's motion for costs, ECF No. 164, as it pertains to miscellaneous expenses is **DENIED**.

8. The Clerk shall enter judgment for fees and costs stating, "Defendant is entitled to judgment against Plaintiff in the amount of **$117,787.50** in attorneys' fees, and **$16,205.76** in costs, for a total judgment amount of **$133,993.26**, for which sum let execution issue."

9. The Clerk shall close the file.

**SO ORDERED on April 24, 2024.**

<u>**s/Mark E. Walker**</u>
**Chief United States District Judge**

42